**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

AXEL J.M.C.,

Petitioner,

v.

MIKE STANSKI, *Jail Administrator,*
*Freeborn Adult Detention Center*;

DAVID EASTERWOOD, *Acting Director, St.*
*Paul Field Office, Immigration and*
*Customs Enforcement*;

TODD M. LYONS, *Acting Director of*
*Immigration and Customs Enforcement*;

MARKWAYNE MULLIN, *Secretary, U.S.*
*Department of Homeland Security*; and

TODD BLANCHE, *Acting Attorney General*
*of the United States*,

Respondents.

Civil No. 26-2281 (JRT/EMB)

**MEMORANDUM OPINION AND ORDER**
**GRANTING PETITION FOR WRIT OF**
**HABEAS CORPUS**

---

Erin Schutte Wadzinski, **KIVU IMMIGRATION LAW PLLC**, 222 Tenth Street, P.O. Box 104, Worthington, MN 56187; and Rachel M. Engebretson, **ENGEBRETSON LAW FIRM, P.A.**, 989 118th Avenue Northeast, Blaine, MN 55434, for Petitioner.

David John Walker, **FREEBORN COUNTY ATTORNEY'S OFFICE**, Freeborn County Government Center, 411 South Broadway Avenue, Albert Lea, MN 56007, for Mike Stanski; David W. Fuller and Joshua Sweeney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Federal Respondents.

Petitioner Axel J.M.C. is a citizen of Honduras who arrived in the United States in 2013 when he was 12 years old.  He has no adult criminal history.  Petitioner was arrested by U.S. Department of Homeland Security ("DHS") officials on April 14, 2026.  On April 18, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus alleging that his arrest and continued detention violate the Fourth and Fifth Amendments of the U.S. Constitution, as well as the Immigration and Nationality Act ("INA") and federal regulations governing its implementation.

The Court concludes that Petitioner's arrest and detention violate his Fifth Amendment right to procedural due process.  The Court will grant the petition and order that Petitioner receive an individualized bond hearing.  The Court declines to reach Petitioner's claims under the Fourth Amendment and the INA.

**BACKGROUND**

**I.      FACTS**

Petitioner was born in Honduras and arrived in the United States as an unaccompanied child when he was 12 years old.  (Pet. Writ of Habeas Corpus ("Pet.") ¶ 14, Apr. 18, 2026, Docket No. 1.)  He "presented himself to an immigration official at the border" and was "briefly detained . . . in a government-run humanitarian shelter for children."  (Pet. ¶ 2.)  The U.S. Border Patrol served Petitioner with a Notice to Appear, charging him as removable.  (Decl. of John Ligon ("Ligon Decl.") ¶ 8 & Ex. A, Apr. 22, 2026, Docket No. 6.)  Petitioner was ultimately released by the Office of Refugee Resettlement "to the care of his biological mother in Minnesota," after he was found to be "not

dangerous or a flight risk." (Pet. ¶ 2; *see also* Ligon Decl. ¶ 9.) "After he graduated from school and gained a work permit, [Petitioner] fully committed himself to the various jobs that he worked. He worked hard enough to secure his own apartment in Adrian, Minnesota, while continuing to support his mother and other family members who relied on him." (Pet. ¶ 49.)

In 2019, United States Citizenship and Immigrant Services (USCIS) granted Petitioner Special Immigrant Juvenile Status. (*Id.* ¶¶ 2, 47); *see* 8 U.S.C. § 1101(a)(27); 8 C.F.R. § 204.11. "A special immigrant juvenile is defined as one who has been declared dependent on a U.S. juvenile court due to abuse, abandonment or neglect; for whom it is not in their best interests to be returned to their country of origin; and for whom DHS consents to the grant of special immigrant juvenile status." *Zamora v. Noem*, No. 8:26CV79, 2026 WL 766087, at *1 (D. Neb. Mar. 18, 2026). An individual designated with Special Immigrant Juvenile Status "shall be deemed, for purposes of [obtaining adjustment for lawful permanent resident status under 8 U.S.C. § 1255(a)] to have been paroled into the United States." 8 U.S.C. § 1255(h).

Petitioner also pursued "a simultaneous asylum claim" and received a work permit. (Pet. ¶ 49.) In other words, Petitioner has lawfully and diligently "pursue[d] all potential forms of removal defense relief that he qualified for." (*Id.*) USCIS granted Petitioner Deferred Action in 2022. (Ligon Decl. ¶ 13 & Ex. E.) On February 12, 2023, USCIS

terminated Petitioner's Deferred Action status, however his special immigrant juvenile status remained approved.  (*Id.* ¶ 14 & Ex. F.)

In March 2026, Petitioner moved to terminate his removal proceedings.  (Ligon Decl. ¶ 15 & Ex. G.)  An immigration judge denied Petitioner's motion later that month and noted that an individual hearing would be scheduled "to resolve Respondent's adjustment of status request."  (*Id.* ¶ 16 & Ex. H.)

On April 14, 2026—"without any notice or warning"—Respondents arrested Petitioner.  (Pet. ¶ 50.)  On the same date, federal officials "served Petitioner an I-200" administrative warrant for his arrest.  (Ligon Decl. ¶ 17.)  Petitioner's Form I-213, "Record of Deportable/Inadmissible Alien," identifies Petitioner as an "alien present without admission or parole."  (*Id.*, ¶ 5 & Ex. C at 2.)

Petitioner is now in detention at the Freeborn County Jail.  (*Id.* ¶ 19.)  He is currently awaiting a hearing at which an immigration judge will "adjudicat[e] [his] adjustment of status application."  (Pet.'s Notice at 1, Apr. 29, 2026, Docket No. 11.)

## II.   PROCEDURAL HISTORY

On April 18, 2026, Petitioner filed a Verified Petition for Writ of Habeas Corpus, contending that his detention is unlawful under the Fourth Amendment, Fifth Amendment, and Immigration and Nationality Act and its implementing regulations.  The Court directed Respondents to file a reasoned memorandum responding to Petitioner's claims.  (Docket No. 3.)  Respondents timely filed their response, and Petitioner replied. (Docket Nos. 5, 7.)

**DISCUSSION**

It is well-established that "absent suspension" by Congress, the Constitution guarantees that the "writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1., § 9, cl. 2). District courts can provide habeas relief to persons detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). A petitioner must prove unlawful detention by a preponderance of the evidence. *E.g., Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

The Court will turn first to Petitioner's claim relying on the Due Process Clause of the Fifth Amendment. Petitioner primarily seeks immediate release but alternatively seeks "a full and fair bond hearing . . . based only upon his danger to community and flight risk." (Pet. at 25.)

**A.      Fifth Amendment Due Process**

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[T]he government has more flexibility when dealing with immigration." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024). But "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "[G]overnment detention violates [the Due Process Clause] unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and 'narrow'

nonpunitive 'circumstances'[.]" *Id.* at 690 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Here, Respondents' asserted basis for detaining Petitioner is 28 U.S.C. § 1225(b)(2)(A), which provides for mandatory detention for "applicant[s] for admission" into the United States. *See Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) (concluding that an individual who, like Petitioner, was already present in the United States, was nevertheless an "applicant for admission" and is subject to mandatory detention under § 1225(b)(2)(A)).[1]   In responding to Petitioner's Procedural Due Process claim, Respondents argue that the Constitution does not entitle Petitioner to any additional procedural protections beyond those granted under the statute, and that § 1225(b)(2)(A) expressly authorizes his detention without the opportunity to post bond.

Respondents rely in part on *Banyee*, 115 F.4th 928, in which the Eighth Circuit rejected a procedural due process claim brought by a noncitizen detained under 28 U.S.C. § 1226(c).  In *Banyee*, the court construed the Supreme Court's decisions in *Demore v. Kim*, 538 U.S. 510 (2003), and *Zadvydas*, 533 U.S. 678, to "leave no room for a multi-factor 'reasonableness' test" if an individual is detained under § 1226(c).  *Banyee*, 115 F.4th at 933.  However, as other courts in this District have noted, it is not clear that *Banyee*

---

[1] In *Avila*, the Eighth Circuit did not address the merits of the constitutional argument Petitioner makes here.  *See* 170 F.4th at 1140–41 (Erickson, J., dissenting).

applies to the facts of this case. *See, e.g.*, *Orlando R.V.V. v. Blanche*, Civ. No. 26-1903, slip op. at 7–10 (D. Minn. Apr. 28, 2026).

The differences between this case and *Banyee* are stark. First, *Banyee* involved a noncitizen detained pursuant to 28 U.S.C. § 1226(c), which permits mandatory detention of certain "criminal aliens" who have been found to be "inadmissible" or "deportable." Here, Respondents' purported basis for detention is § 1225(b)(2)(A), a different provision only recently interpreted by the Government to permit mandatory detention. "[I]n enacting § 1226(c), Congress made specific, categorical judgments about the dangerousness and flight risks posed by noncitizens convicted of certain enumerated offenses," which are not necessarily applicable here. *See Orlando R.V.V.*, slip op. at 9. Unlike the petitioner in *Banyee*, who was convicted of an aggravated felony, the Petitioner in this case has been law abiding—save for one juvenile conviction 11 years ago—since he arrived in the United States as an unaccompanied minor, fleeing violence in Honduras.

Moreover, USCIS granted the Petitioner in this case Special Immigrant Juvenile Status, meaning that he has been "paroled into the United States," for the purposes of applying for lawful permanent resident status. *See* 8 U.S.C. § 1255(h). Petitioner is in the process of diligently pursuing his Congressionally granted opportunity to seek lawful permanent resident status in the United States and has a hearing scheduled before an immigration judge to adjudicate his application. (*See* Docket 11 at 2.) This specialized

status, when considered alongside Petitioner's lack of criminal history, is an additional reason that *Banyee* is distinguishable. *See Zadvydas*, 533 U.S. at 694 (noting that a noncitizen's protections under the Due Process Clause "may vary depending on status and circumstance").

In short, the Court concludes that *Banyee* does not foreclose Petitioner's Due Process arguments. The Court concludes, as other courts in this district have, that *Banyee* is not binding on the question of whether this Court should assess Due Process claims brought by individuals detained without bond under § 1225(b)(2)(A) under the longstanding framework from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Alicia N.F.C. v. Blanche*, Civ. No. 26-2145, 2026 WL 1005079, at *2 n.2 (D. Minn. Apr. 14, 2026).

### B.    Due Process Analysis

Proceeding to the merits of Petitioner's claim, the Court emphasizes that "due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews*, 424 U.S. at 335 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). The Due Process Clause instead "calls for such procedural protections as the particular situation demands." *Id.* at 902 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "To determine whether a civil detention violates a detainee's due process rights," courts apply three factors set forth by *Mathews*. *See Alicia N.F.C.*, 2026 WL 1005079, at *2. Those factors are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through

the procedures used" and "the probable value . . . of additional . . . safeguards;" and (3) "the Government's interest . . . and . . . burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner's private interest here is of paramount importance. "[T]he interest in being free from physical detention by one's own government," is indeed "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Petitioner, who is presently incarcerated at the Freeborn County Jail, under conditions like those he would be subjected to had he committed a crime, has been deprived of that elemental interest. *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (noting that when courts assess the first *Mathews* factor, they "consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration"). Moreover, Petitioner "has a strong interest in remaining in the country that has been his home [since he was 12 years old] and has granted him the ability to stay and work here [for nearly 13 years]." *See Zamora*, 2026 WL 766087 at *4 (assessing the Due Process claim of an individual detained after they received Special Immigrant Juvenile Status). The Court concludes that the first *Mathews* factor cuts in Petitioner's favor.

Next, the Court finds there to be a high degree of risk, particularly given the extent and velocity of Respondents' immigration-related actions in Minnesota over the past several months, of the mistaken deprivation of liberty in the name of swift immigration

enforcement. *Cf. U.H.A. v. Bondi*, Civ. No. 26-417, 2026 WL 558824, at \*14–15 (D. Minn. Feb. 27, 2026) (concluding that plaintiffs, a group of refugees, were likely to prevail in showing that their procedural due process rights had been violated during Operation Metro Surge). An "individualized bond hearing," at which Petitioner could be heard before continuing to be incarcerated, "would alleviate these risks." *Abdirashid H.M. v. Noem*, Civ. No. 25-4779, 2026 WL 127698, at \*4 (D. Minn. Jan. 9, 2026).

Finally, the burden the Government would bear in providing this additional procedural protection is low, and "would impose minimal, if any, financial or administrative burden on Respondents." *Id.* at \*5. The Court is exceedingly skeptical at any urgent need to remove Petitioner—who, again, has resided in the United States since 2013, and has sought to pursue all lawful avenues of remaining in the country.[2] Respondents identify no persuasive reason that a bond hearing is unnecessary or would impose too significant of a burden in this case.

Because the Court concludes that Petitioner's due process claim under the Fifth Amendment prevails, it offers no view on the merits of Petitioner's claims under the INA or the Fourth Amendment.

---

[2] *See also Orlando R.V.V.*, slip op. at 9 (finding no evidence that the petitioner "was trying to evade authorities" where, like in this case, the petitioner "encountered [immigration officials] when he first entered the country," and thereafter "did not go underground or hide from authorities," but rather "applied for asylum and a work permit").

**CONCLUSION**

Because the Court concludes that Petitioner's continued detention without a bond hearing violates the Due Process Clause of the Fifth amendment, the Court will grant the Petition for Writ of Habeas Corpus insofar as Petitioner seeks an individualized bond hearing. Moreover, because Petitioner's continued detention is interfering with Petitioner's ability to receive a medical exam required for his adjustment of status application, the Court will direct that the bond hearing be provided expeditiously.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Petition for Writ of Habeas Corpus (Docket No. [1]) is **GRANTED** as follows:

   a. Petitioner's detention without an individualized bond hearing violates his rights under the Due Process Clause of the Fifth Amendment;

   b. Respondents shall provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a) within 24 hours of the date of this Order, in which the parties will be allowed to present evidence and argument about whether Petitioner is a danger to the community and presents a flight risk if not detained;

c.  If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention; and

d.  **By 5:00 P.M. on May 4**, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation.

2.  Because filings in immigration habeas matters remain accessible on courthouse public terminals, Petitioner's Motion for Order Directing Redaction (Docket No. [8]) is **GRANTED in part**.  Respondents shall, within 24 hours of this Order, redact all exhibits identified by Petitioner in his motion that include Petitioner's unredacted juvenile delinquency adjudication record; file redacted versions of those exhibits on the public docket; and if necessary, file the unredacted versions under temporary seal pursuant to LR 5.6.

DATED: April 29, 2026
at Minneapolis, Minnesota.
7:50 p.m.

JOHN R. TUNHEIM
United States District Judge

-12-